**WASHINGTON COUNTY BOARD OF EDU-
CATION et al., Appellants,**

v.

**Dallas HARTLEY, Appellee.**

Supreme Court of Tennessee.

Dec. 16, 1974.

C. T. Herndon III, Simmonds, Herndon, Johnson, Coleman, Brading & McKee, Johnson City, for appellants.

David Crockett, Elizabethton, for appellee.

OPINION

COOPER, Justice.

The Washington County Board of Education and its insurance carrier, Shelby Mutual Insurance Company, have appealed from the decree of the Chancery Court of Carter County awarding appellee, Dallas Hartley, benefits under the Workmen's Compensation Act. The appellants insist

there was no evidence to support the chancellor's finding of permanent partial disability of the body as a whole, and that the award of benefits should have been limited to an award of permanent partial disability to the right lower extremity.

The evidence shows that Dallas Hartley was employed as a painter in the maintenance department of the Washington County School System. On May 4, 1973, Mr. Hartley was painting a school building when the scaffold on which he was standing collapsed. Mr. Hartley fell some 30 to 38 feet onto an asphalt surface, sustaining an "explosion type" injury to the bones of his right heel and compression fractures to three dorsal vertebra. There is also evidence in the record that Mr. Hartley was rendered unconscious by the fall.

The injury to the heel was repaired by a surgical fusion of the joint above the heel bone. The compression fractures of the dorsal spine were treated conservatively by bed-rest and by the wearing of a corset for several months.

Mr. Hartley returned to work four months after his fall and has worked regularly since. However, according to him and his fellow workmen, he has not been able to perform all tasks required of him as a painter and has lost about fifty per cent (50%) of his ability to work.

Mr. Hartley testified that since his fall, he has suffered pain both from the back injury and the foot injury. He also testified he has "blacked out" on five different occasions; that he can no longer work on high steel or climb ladders and scaffolds, but is limited to working on the ground or off of a five-foot step ladder; and, that he is limited in the time he can work off the ladder because of pressure on his foot and back. He also testified he is unable to squat, lift, stoop, and bend like he could before he was injured and that he has difficulty carrying five-gallon buckets of paint.

Mrs. Hartley testified that since her husband's injury, he no longer helps her with the house work or plays with the children, but lays down after he eats his meals; and that each night, he sleeps with a piece of plywood under his mattress and she rubs his back with alcohol so that he can rest.

The only medical witness to testify was Dr. Samuel Huddleston, the treating orthopedic surgeon. In describing Mr. Hartley's injuries, Dr. Huddleston stated the injury to the right heel was the more serious injury and was the only injury that resulted in permanent disability. According to Dr. Huddleston, the fusion of the joint above the heel bone left Mr. Hartley with stiffness in the ankle and with restricted movement of the foot from side-to-side, which makes it dangerous for Mr. Hartley to work on scaffolds, or any uneven ground. Though the actual injury was to the right foot, Dr. Huddleston was of the opinion that Mr. Hartley had a twenty-five per cent (25%) permanent partial disability to the entire right lower extremity due to stiffness, insecurity in the use of the limb, and discomfort.

According to Dr. Huddleston, the compression fractures of the dorsal vertebra were "relatively minimal as far as spine fractures are concerned, and have none of the bad outlooks that many spine fractures do . . . and it was [his] feeling that [Mr. Hartley suffered] a relatively mild fracture in this area." Dr. Huddleston found no functional impairment, no nerve damage, and no instability of the bone structure of the spine. He also testified that Mr. Hartley could move his back and bend "normally for a man of his age," and had no permanent disability attributable to the back injury.

When asked about the blackouts described in Mr. Hartley's testimony, Dr. Huddleston attributed them to "a nervous reaction" not directly related to the fall.

The chancellor, relying in both lay and medical testimony, concluded that Mr. Hartley had sustained a permanent partial disability of fifty per cent (50%) of the body as a whole, and awarded bene-

fits accordingly. The appellant insists that absent medical proof of a permanent disability to other than a scheduled member of the body, Mr. Hartley's recovery of benefits must be limited to the scheduled member. Appellee takes the position that the testimony of the employee, standing alone, is sufficient to support an award of permanent partial disability, citing A. C. Lawrence Leather Co. v. Loveday, 224 Tenn. 317, 455 S.W.2d 141 (1970). The *Loveday* case, as we understand it, stands for the proposition that once a permanent disability is established, the trial judge is entitled to determine the degree of disability from all the evidence, expert and nonexpert. This court has held with reasonable consistency that lay testimony is of probative value in establishing such matters as the existence of pain, its location, the inability of the employee to work, the degree of permanent disability of the employee once permanent disability has been established by medical testimony, but that lay testimony generally is incompetent to support a finding of medical causation or a finding of permanent disability. Tom Still Transfer Company v. Way, 482 S.W.2d 775 (Tenn.1972) and cases there cited. In all but the most obvious cases, such as the loss of a limb or of an eye, medical causation and the permanency of an injury must be established by expert medical testimony. Floyd v. Tennessee Dickel Company, 225 Tenn. 65, 463 S.W.2d 684 (1971).

 The testimony of the medical witness in this case established that the only injury sustained by Mr. Hartley resulting in a permanent disability was the injury to the heel and that it adversely affected the use of Mr. Hartley's right lower extremity. In Shores v. Shores, 217 Tenn. 96, 395 S.W.2d 388 (1965), this court pointed out that where the injury causing a permanent partial disability is to a scheduled member of the body—which the right lower extremity is—compensation may not be awarded to the employee on the basis of a percentage disability accorded to the body as a whole but must be limited to the

scheduled benefits. See also T.C.A. § 50-1007(c) and Chapman v. Clement Bros., Inc., 222 Tenn. 223, 435 S.W.2d 117 (1968).

It follows that that part of the decree of the chancellor awarding Mr. Hartley benefits for 200 weeks, based on a finding of fifty per cent (50%) disability to the body as a whole, must be reversed. Judgment will be entered awarding Mr. Hartley benefits for fifty weeks as provided in the schedule of benefits for a twenty-five per cent (25%) permanent partial disability to the right leg. Otherwise the decree of the chancellor is affirmed. The case will be remanded generally and specifically for the enforcement of the judgment. Costs of the appeal are adjudged against the appellee, Dallas Hartley.