FILED

May 12, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 7:15 AM



**COURT OF WORKERS' COMPENSATION CLAIMS**
**DIVISION OF WORKERS' COMPENSATION**

| | |
|---|---|
| Danya Duncan, | ) DOCKET #: 2015-06-0043 |
|     Employee, | ) STATE FILE #: 2642-2015 |
| v. | ) DATE OF INJURY: December 8, 2014 |
| Houchens Food Group, Inc., | ) Chief Judge Switzer |
|     Employer, | ) |
| and | ) |
| Chubb Group, | ) |
|     Insurance Carrier/TPA. | ) |

## EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge on April 28, 2015, upon the Request for Expedited Hearing filed by the Employee Danya Duncan (Mr. Duncan), on March 31, 2015, pursuant to Tennessee Code Annotated section 50-6-239 to determine if the Employer, Houchens Food Group, Inc. (Houchens), is obligated to provide medical and temporary disability benefits. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes that Mr. Duncan is entitled to additional medical benefits in the form of a panel of physicians for evaluation of his injury, but he is not entitled to the requested arthroscopic procedure or additional temporary disability benefits at this time.

## ANALYSIS

### Issues

*Whether Mr. Duncan sustained an injury that arose primarily out of and in the course and scope of his employment with Houchens.*

*Whether Mr. Duncan is entitled to additional medical care as recommended by a physician.*

*Whether Mr. Duncan is entitled to past or future disability benefits.*

1

**Evidence Submitted**

The Court admitted into evidence the exhibits below:

1. Medical Records of Danya Duncan (26 pages)
   - Gateway Medical Center/Riverside Medical Associates (Dr. Tsambassis);
   - Tennessee Orthopaedic Alliance and Surgery Center of Clarksville (Dr. DeVries); and,
   - Clarksville Imaging Center
2. Form C-20, First Report of Injury, December 8, 2014
3. Form C-42, Choice of Physician (undated)
4. Form C-41, Wage Statement, February 20, 2015
5. Form C-23, Notice of Denial, January 15, 2015
6. U.S. Department of Labor FMLA Notice, January 15, 2015
7. Carrier's "Payment Summary" forms, five (5) payments: December 18, 22 and 31, 2014, and January 7 and 14, 2015.

The Court designated the following as the technical record:

- Petition for Benefit Determination, January 30, 2015
- Employer's position statement, March 9, 2015
- Dispute Certification Notice, March 10, 2015
- Request for Expedited Hearing, March 31, 2015.

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings or any attachments to them as allegations unless established by the evidence.

The parties agreed that:

- Mr. Duncan's compensation rate is $127.20 per week;
- The date of injury is December 8, 2014; and,
- Mr. Duncan provided timely notice of the injury to Houchens.

The following witnesses provided in-person testimony: Mr. Duncan and Robert Duncan.

## History of Claim

### *Summary of Alleged Incident*

Mr. Duncan is a thirty-seven (37) year-old resident of Montgomery County, Tennessee. On direct examination, he testified that he worked at Houchens as a cashier for approximately one year prior to the date of injury. His duties included ringing up the customers' orders, placing the items in bags held by a carousel, placing the bags in the customers' shopping carts and occasional cleaning. He said that, before the date of injury, nothing was wrong with his left knee.

Mr. Duncan testified that, on December 8, 2014, while "ringing out" a customer and placing items in bags, he lifted a turkey, weighing approximately twenty-five (25) pounds, to bag it. He struck his left knee on the register, losing his balance. He said that he then "hyperflexed" his knee, which he later clarified to mean that while the knee remained against the register, his body fell forward, causing his knee to hyperextend so that it bent in an unusual direction. He then struck his left knee against the bagging carousel, which stands near the register on the floor and revolves as items are placed in bags. Mr. Duncan said that, after the knee made contact with the bagging carousel, he immediately experienced pain. He conceded that Dr. William DeVries subsequently characterized his reported pain as greater than the physician would have expected, but stated, "I understand that. But I'm the one experiencing the pain; I'm the one dealing with this."

The First Report of Injury form states, "EE turned to put groceries in cart and hit his left knee on bagging stand. Knee contusion stationary object" (Ex. 2).

On cross-examination, Mr. Duncan testified that the injury occurred at approximately 10:00 a.m. Before the date of injury, he never hit his left knee on the carousel, nor did he ever seek medical treatment for his left knee.

Robert Duncan, Mr. Duncan's father, also testified. Robert Duncan said that, although Mr. Duncan does not live with him, he sees him often, and that to the best of his knowledge, Mr. Duncan never experienced a problem with his left knee before the date of injury.

### *Medical History*

Dr. Nicholas Tsambassis examined Mr. Duncan on the date of injury. Dr. Tsambassis is the only doctor listed on Form C-42, Agreement Between Employer/Employee Choice of Physician (Ex. 3). Although the form lists the date of injury and was signed by Mr. Duncan, it does not contain a date of selection.

At the first visit, Dr. Tsambassis ordered an x-ray of the knee (Ex. 1, p. 6). Dr. Tsambassis ordered an MRI on December 11, 2014 (Ex. 1, p. 7, p. 9). On December 15, 2014, Dr. Tsambassis excused Mr. Duncan from work (Ex. 1, p. 11). After reviewing the MRI results (Ex. 1, p. 26), Dr. Tsambassis referred Mr. Duncan to Tennessee Orthopaedic Alliance on December 29, 2014 (Ex. 1, p. 12). The referral was general in nature so that no specific physician was designated.

Mr. Duncan saw Dr. DeVries at Tennessee Orthopaedic Alliance on January 8, 2015 (Ex. 1, pp. 17-23). Under "History of Illness," Dr. DeVries noted, "He injured his knee on December 8 when he was at work and struck his left knee against a cash register and *hyperflexed* his knee. Ever since he has had pain and difficulty walking and weightbearing" (Ex. 1, p. 17; emphasis added). Under "Impression," Dr. DeVries wrote, "Left knee pain with medial meniscal tear" (Ex. 1, p. 18). He additionally wrote, "I discussed with him that clearly his pain is out of portion (sic.) to what I am seeing on the MRI scan. ... I did recommend arthroscopic evaluation of the meniscus to remove the tearing ... ." *Id.* Dr. DeVries placed Mr. Duncan on limited duty, to include "sitting job only," and, "no squatting, kneeling or climbing" (Ex. 1, p. 18, p. 22).

Carrier's adjuster faxed a letter to Dr. DeVries on January 12, 2015 (Ex. 1, p. 24). In the introductory paragraphs, Carrier wrote:

> On 12/8/14, he was bagging groceries for a customer and struck the left knee at the end of the counter. The left knee began swelling right away. He had instant pain under the left kneecap. The new Workers' Compensation law, (sic) requires that all injuries must arise primarily out of and in the course and scope of employment in order for the claim to be compensable. This threshold can only be met if the employee can show by a preponderance of the evidence that the employment was at least 50.1 percent of the cause of the injury.

The adjuster asked, "In your medical opinion, did Mr. Duncan's left knee pain and possible small posterior horn medial meniscal tear arise primarily out of and in the course of his employment and did the employment cause at least 50.1 percent of the condition?" In his January 14, 2014 response, Dr. DeVries wrote, "Unlikely mechanism of injury for meniscus tear. Do not think it caused 50.1% of condition." (Underline in original.) The adjuster further asked, "Could the possible small posterior horn medial meniscal tear be due to some other cause, since you noted that clearly his pain is out of proportion to what you saw on the MRI scan?" Dr. DeVries wrote, "Yes. May have preexisted." The adjuster then asked, "Could there be any other cause for his left knee pain such as his weight?" Dr. DeVries responded, "Patellofemoral pain from direct injury."

4

According to the "Choice of Physician" form, Houchens offered authorized treatment with one provider, Dr. Tsambassis (Ex. 3). Houchens initiated temporary total disability (TTD) benefits on December 18, 2014, and made its final TTD payment on January 14, 2015 (Ex. 7). Houchens denied the claim on January 15, 2015 (Ex. 5), and declined further medical benefits.

Mr. Duncan filed a Petition for Benefit Determination on January 30, 2015, seeking medical and temporary disability benefits.[1] The parties failed to resolve the disputed issues through mediation and the Mediating Specialist filed the Dispute Certification Notice on March 10, 2015. On March 31, 2015, Mr. Duncan filed a Request for Expedited Hearing. The hearing occurred on April 28, 2015.

## Employee's Contentions

Mr. Duncan asserts he sustained an injury arising primarily out of and in the course and scope of his employment with Houchens. He contends he is entitled to additional medical benefits, specifically, the arthroscopic surgery recommended by Dr. DeVries. With regard to Dr. DeVries' January 14, 2015 response to the adjuster, Mr. Duncan argues that, while Dr. DeVries wrote that the injury "may have preexisted," this is a fact for the Court to find, rather than a matter for the physician's speculation. The Court should give the Workers' Compensation Law a remedial interpretation.

## Employer's Contentions

The amended Workers' Compensation Law provides for a level playing field so that it is not construed to favor either party. *Tindall v. Waring Park Ass'n.,* 725 S.W.2d 935 (Tenn. 1987), requires that causation be shown by expert medical evidence. Dr. DeVries did not find a causative link in his January 14, 2015 response to the adjuster. The adjuster's letter accurately characterized the new standard regarding expert medical evidence. Mr. Duncan failed to offer sufficient proof of causation and Houchens properly denied the claim.

## Findings of Fact and Conclusions of Law

*Standard Applied*

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party, but shall be construed fairly, impartially, and in accordance with

---

[1] The Petition for Benefit Determination additionally seeks permanent disability benefits. However, Mr. Duncan's Counsel indicated at the Expedited Hearing that Mr. Duncan is not at Maximum Medical Improvement, and therefore this issue is not properly before the Court at this time.

basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). Tennessee Code Annotated section 50-6-239(c)(6) provides that, "[u]nless the statute provides for a different standard of proof, at a hearing the employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence." Tenn. Code Ann. § 50-6-239(c) (2014). A different standard of proof exists for the issuance of interlocutory orders at expedited hearings than the standard of proof required at compensation hearings. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063 (Tenn. Work. Comp. App. Bd., March 27, 2015). A workers' compensation judge may enter an interlocutory order for medical or temporary benefits upon a determination that the injured employee would likely prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2014); *McCall v. Nat'l Health Care Corp.*, 100 S.W.3d 209, 214 (Tenn. 2003). When considering a claim for medical benefits at the Expedited Hearing stage, it is the responsibility of the Court to carefully consider not only the testimony, but also carefully review and examine the submitted evidentiary exhibits.

*Factual Findings*

On December 8, 2014, Mr. Duncan sustained an injury arising primarily out of and in the course and scope of his employment when he hyperextended his knee and struck it against the bagging carousel while performing his assigned work duties. Houchens failed to offer a panel in compliance with the Workers' Compensation Law when it offered Mr. Duncan only one physician rather than a choice of three physicians. Houchens did not offer a panel of orthopedic physicians. Mr. Duncan offered no medical evidence to entitle him to re-initiation of temporary total disability benefits, at this time.

*Application of Law to Facts*

*Mr. Duncan sustained an injury that arose primarily out of and in the course and scope of his employment with Houchens.*

Tennessee Code Annotated section 50-6-102(13) (2014) defines "injury" and "personal injury" to mean an injury by accident "arising primarily out of and in the course and scope of employment … ." Tenn. Code Ann. § 50-6-102(13)(A) (2014). An injury is "accidental" only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence[.] *Id.* An injury "arises primarily out of and in the course and scope of employment" only if it has been shown "by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" Tenn. Code Ann. § 50-6-102(13)(B) (2014).

The Tennessee Supreme Court has consistently held that, in order to qualify as a compensable workers' compensation claim, an injury must both "arise out of" and occur

6

"in the course of" employment:

> The phrase "in the course of" refers to time, place, and circumstances, and "arising out of" refers to cause or origin. "[A]n injury by accident to an employee is in the course of employment if it occurred while he was performing a duty he was employed to do; and it is an injury arising out of employment if caused by a hazard incident to such employment." Generally, in injury arises out of and is in the course and scope of employment if it has a rational connection to the work and occurs while the employee is engaged in the duties of his employment.

*Cloyd v. Hartco Flooring Co.,* 274 S.W.3d 638, 643 (Tenn. 2008)(*quoting Orman v. Williams Sonoma, Inc.,* 803 S.W.2d 672, 676 (Tenn. 1991).

In this case, Mr. Duncan credibly testified that, while ringing up a customer and placing items in bags, he lifted a turkey to bag it, struck his left knee on the register, and lost his balance, causing his knee to hyperextend before he hit it against the bagging carousel. Mr. Duncan offered sufficient detail regarding how the accident occurred, including the time, place and circumstances of the occurrence. The Court finds that his injury occurred in the course of employment because the accident took place while he was ringing up customers' orders and bagging their groceries, a duty Houchens employed him to do. The injury arose from his employment because lifting a heavy item and losing one's balance is a hazard incident to his employment as a cashier. A rational connection exists between Mr. Duncan's injury and his work, and the injury occurred while Mr. Duncan was engaged in the duties of his employment. Significantly, Houchens offered no contrary eyewitness testimony or other evidence to contradict Mr. Duncan's version of how the injury occurred. Moreover, Mr. Duncan's testimony is generally consistent with the mechanism of injury conveyed in Dr. DeVries' notes (Ex. 1, p. 17), as well as the First Report of Injury (Ex. 2).

Except in "the most obvious, simple and routine cases," an employee must establish by expert medical testimony that an injury occurred and that there exists a causal relationship between the injury and the employment activity. *Wheetley v. State,* 2014 Tenn. LEXIS 476, No. M2013-01707-WC-R3-WC (Tenn. Workers' Comp. Panel, June 25, 2014) (*citing Excel Polymers, LLC v. Broyles,* 302 S.W.3d 268, 274 (Tenn. 2009); *Cloyd,* 274 S.W.3d at 643; and *see Tindall,* 725 S.W.2d at 937). The Workers' Compensation Law further provides that, "An injury causes death, disablement or the *need* for medical treatment only if it has been shown *to a reasonable degree of medical certainty* that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes[.]" Tenn. Code Ann. § 50-6-102(13)(C) (2014)(emphasis added). In addition, "'Shown to a reasonable degree

7

of medical certainty' means that, in the opinion of the physician, it is more likely than not *considering all causes*, as opposed to speculation or possibility[.]" Tenn. Code Ann. § 50-6-102(13)(D) (2014) (emphasis added). The question before the Court is whether the meniscal tear resulted from the work injury.

Houchens contends that Mr. Duncan's claim fails, relying upon the adjuster's letter to Dr. DeVries and his responses on the issue of causation of the meniscal tear. The Court disagrees. In *McCord v. Advantage Human Resourcing,* No. 2014-06-0063 (Tenn. Work. Comp. App. Bd., March 27, 2015), the Appeals Board clarified the standard governing expedited hearings:

> …[A]n employee need not prove each and every element of his or her claim by a preponderance of the evidence at an expedited hearing to be entitled to temporary disability or medical benefits, but must instead present evidence sufficient for the trial court to conclude that the employee would likely prevail at a hearing on the merits in accordance with the express terms of section 50-6-239(d)(1).

*See* Tenn. Code Ann. § 50-6-239(d)(1) (2014).

In this case, Mr. Duncan offered credible, sufficiently detailed testimony regarding the particulars of the accident, along with his testimony that he experienced no other previous problems with the knee. An employee's assessment of his or her physical condition is competent testimony and may not be disregarded. *Uptain Constr. Co. v. McClain,* 526 S.W.2d 458, 459 (Tenn. 1975). Robert Duncan's testimony supports Mr. Duncan's assertion that he had no problems with the knee prior to the date of injury.

In contrast, Houchens offered no contrary lay witness testimony, but rather relied solely upon the adjuster's letter and Dr. DeVries' response. The Court finds several flaws with this letter. To wit, the adjuster conveyed the mechanism of injury as, "On 12/8/14, he was bagging groceries for a customer and struck the left knee at the end of the counter. The left knee began swelling right away. He had instant pain under the left kneecap." Notably absent is any mention of the hyperextension or hyperflexion of the knee. Thus, the Court does not know whether DeVries based his statement, "Unlikely mechanism of injury for meniscus tear. Do not think it caused 50.1%," upon his discussion with and examination of Mr. Duncan, or merely the adjuster's overly simplified recitation of the facts. Moreover, Dr. DeVries wrote that he does not "think" it caused the injury. This statement does not covey that it is his opinion within a reasonable degree of medical certainty. In that same communication, Dr. DeVries asserts that the injury "*may* have preexisted," suggesting additional equivocation on his part. Further, the adjuster sought other possible causes by asking, "Could there be any other cause for his left knee pain such as his weight?" Dr. DeVries response indicates that the pain came

from the direct blow to the knee when he writes: "Patellofemoral pain *from direct injury*" (emphasis added). This response does not indicate any consideration by Dr. Devries of the meniscal tear.

Houchens implicitly contends that Dr. Devries' opinion on causation is entitled to a presumption of correctness. *See* Tenn. Code Ann. § 50-6-102(E) (2014). This presumption does not apply in this case.

Tennessee law requires an employer to provide "…free of charge to the employee such medical and surgical treatment…made reasonably necessary by accident as defined in this chapter[.]" Tenn. Code Ann. § 50-6-204(a)(1)(A) (2014). The statute further requires:

> …[I]n any case when the employee has suffered an injury and expressed a need for medical care, the employer shall designate *a group of three (3)* or more independent reputable physicians, surgeons, chiropractors or specialty practice groups if available in the injured employee's community…, from which the injured employee shall select one (1) to be the treating physician.

Tenn. Code Ann. § 50-6-204(a)(3)(A)(i) (2014) (emphasis added). The Workers' Compensation Law states that the opinion of "the treating physician, selected by the employee from the employer's designated panel of physicians….shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence." Tennessee Code Annotated section 50-6-102(E) (2014).

Here, Houchens argues that Dr. DeVries' opinion that no causal link exists between the accident and the meniscal tear injury, as expressed in his response to the adjuster, is a proper basis for its denial of the claim. Importantly, however, upon further examination of the "Choice of Physicians" form (Ex. 3), Houchens offered one physician rather than a group of three or more physicians. This was Dr. Tsambassis. There is nothing in the record indicating Mr. Duncan received a panel from which he chose Dr. DeVries. In providing only one doctor on the original panel and not providing a panel of specialists from which Mr. Duncan could chose, Houchens failed to comply with the plain language of section 50-6-204(a)(3). Hence, no presumption of correctness attached to Dr. DeVries' causation opinion. Even if such were the case, the Court finds that Tennessee Code Annotated section 50-6-239(d)(1) subjects subsection 50-6-102(E) to the mandates of the different standard of proof at an Expedited Hearing. To hold otherwise would require Mr. Duncan to rebut a physician's opinion by a preponderance of the evidence while only needing to demonstrate a likelihood of success on all other points.

In sum, upon weighing the parties' evidence, the Court finds that at this time, Mr.

9

Duncan presented sufficient evidence to conclude that he would likely prevail at a hearing on the merits.

*Mr. Duncan is entitled to a proper panel of orthopedic physicians from which he may select an authorized treating physician.*

Mr. Duncan seeks an order requiring Houchens to provide him the arthroscopy, as recommended by Dr. DeVries. At this time, the Court cannot find the requisite causal link to order the arthroscopy Mr. Duncan seeks. Rather, the Court concludes that Houchens must offer another panel that complies with the statute. Given the medical history to date, it seems appropriate to offer a panel of orthopedic specialists, to promote the speedier resolution of this matter. Should the provider Mr. Duncan chooses from that panel opine that causation of the meniscal injury exists and an arthroscopy is medically necessary, Houchens shall authorize the procedure.

*Mr. Duncan is not entitled to any past or future disability benefits at this time.*

To establish entitlement to temporary total disability benefits as contemplated in Tennessee Code Annotated section 50-6-207(1), an employee must show that (1) the employee was totally disabled from working as a result of a compensable injury; (2) that a causal connection exists between the injury and the employee's inability to work; and (3) the duration of the period of the employee's total disability. *Gray v. Cullom Mach., Tool & Die, Inc.*, 152 S.W.3d 439, 443 (Tenn. 2004).

In the instant case, Mr. Duncan failed to satisfy his burden to show that he was totally disabled from working as a result of a compensable injury. The medical records indicate that Dr. DeVries placed Mr. Duncan on limited duty, with no squatting, kneeling or climbing, and sitting only, on January 8, 2015. Mr. Duncan offered no proof of his current employment status or medical condition. He additionally failed to offer proof that he presented Dr. DeVries' restrictions to Houchens and that Houchens failed to accommodate them. Mr. Duncan has not shown a likelihood of success on this issue and accordingly his claim for additional disability benefits is denied, at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Pursuant to Tennessee Code Annotated section 50-6-204, Houchens shall provide Mr. Duncan with a panel of orthopedic physicians from which he may select one. In the event that the physician determines causation and medical necessity, Houchens shall pay for the arthroscopy and/or any other recommended treatment(s).

2. Mr. Duncan's claim against Houchens and its workers' compensation carrier for the requested temporary disability benefits is denied at this time.

10

3. This matter is set for an Initial Hearing on Tuesday, July 14, 2015, at 9:00 a.m. (CDT).

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven (7) business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Division by email to WCCompliance.Program@tn.gov no later than the seventh (7th) business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 12th day of May, 2015.**

**Kenneth M. Switzer, Chief Judge**
**Court of Workers' Compensation Claims**

Initial Hearing:

An Initial Hearing has been set with **Chief Judge Kenneth M. Switzer, Court of Workers' Compensation Claims. You must call 615-532-9552 or toll free at 866-943-0025 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

11

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The Judge must approve the statement of the evidence before the Clerk of Court shall submit the record to the Clerk of the Appeals Board.

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 12th day of May, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Mart Fendley, Employee's attorney | | | | | x | mart@fendleylaw.com |
| James Tucker, Employer's attorney | | | | | x | jtucker@manierherod.com |

Penny Shrum, Clerk of Court
**Court of Workers' Compensation Claims**
**WC.Court.Clerk@tn.gov**

12